**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
v.                                  )   Criminal Action
                                    )   No. 16-10166-PBS
VAUGHN LEWIS,                       )
                                    )
            Defendant.              )
_____)

## MEMORANDUM AND ORDER

July 11, 2017

Saris, C.J.

### INTRODUCTION

Defendant Vaughn Lewis, charged with drug trafficking, moves to suppress all items seized from 7 Raintree Lane, Apartment 7F, Brockton, Massachusetts, and the storage closet located at the Raintree apartment building and all fruits thereof. Defendant argues that the search warrant, on its face, lacked probable cause to believe that any contraband would be located at 7 Raintree Avenue as there was no nexus between any of the alleged activity and that address. Additionally, Defendant argues that any allegations in the search warrant affidavit were stale since all of the observations were made at least three weeks, if not several months, prior. Finally, Defendant contends the search of the storage closet exceeded the scope of the search warrant.

1

A hearing was held. One witness, Carmen Depina, the lessee of 7 Raintree Lane, Apartment 7F and Defendant's partner, testified at the hearing. Lewis's Motion to Suppress, Docket No. 198, is **DENIED**.

## FINDINGS OF FACT

I. **The Investigation**

In October 2015 authorities began an investigation into a drug trafficking organization in Brockton, Massachusetts. Specifically investigators believed that Luis Rivera was running a conspiracy to distribute and distribution of cocaine and crack cocaine.

Two cooperating witnesses identified Rivera to authorities. Investigators conducted multiple controlled purchases from Rivera totaling over 150 grams of cocaine and 30 grams of cocaine base. Authorities obtained a warrant to tap Rivera's cell phones. Based on these intercepted communications, Vaughn Lewis was identified as an individual who purchased distribution quantities of drugs from Rivera. Investigators were able to identify two locations used by Rivera to distribute cocaine and cocaine base to his customers including 25 Columbia Street, Apartment 1R, Brockton, Massachusetts. Surveillance was established at these locations. Investigators observed Lewis meet with Rivera at 25 Columbia Street on two occasions to be supplied with drugs.

On February 22, 2016, Lewis contacted Rivera in an attempt to purchase 62 grams and 14 grams of cocaine. Rivera told Lewis to meet him "where you seen me last" to conduct the deal. Based on information learned in the intercepted communications, investigators set up surveillance at 25 Columbia Street to observe the deal. Subsequent observations that day revealed that Rivera engaged in what appeared to be a drug exchange at 25 Colombia Street. While the other party was unidentified, the police observed he operated a gray 2007 Toyota Camry. This vehicle was registered to Carmen Depina who resided at 7 Raintree Lane, Apartment 7F. Based on their surveillance, investigators believed Lewis also resides at 7 Raintree Lane, Apartment 7F.

Four days later on February 26, 2016, communications between Rivera and Lewis suggested they were going to engage in another drug deal. Rivera texted Lewis that he was "Gucci with some fire." Based on these communications, surveillance was set up to observe Rivera, at 25 Columbia Street, and Lewis, at 7 Raintree Lane, prior to the deal. Pursuant to this surveillance, investigators observed Lewis enter a black 2010 Nissan outside 7 Raintree Lane. This car was registered to Carmen Depina at 7 Raintree Lane, Apartment 7F, Brockton, Massachusetts. Investigators then observed Lewis, driving the black Nissan,

meet with Rivera at 25 Columbia Street. They appeared to engage in a drug deal.

On March 7, 2016, in an intercepted call between Rivera and Lewis, Lewis told Rivera he still owed Rivera money and that "he hadn't been running around like that" because he was working ten hour days. But, Lewis also stated that he was "about to kick it up again" and that he "needs Sobos." Investigators interpreted this to mean suboxone, a controlled substance used to treat pain and addiction to narcotics.

On May 17, 2016, approximately three weeks before the search warrant was issued, Lewis was seen dealing crack cocaine and heroin by Brockton police officers. The police officers observed the black 2010 Nissan engage in two separate drug transactions in a parking lot. The officers subsequently stopped both vehicles that had met with the person in the black Nissan, seizing a small amount of crack cocaine from one vehicle and both heroin and crack cocaine from the other vehicle. Individuals from both vehicles identified Lewis as the person who had sold them the drugs. Twenty minutes later Brockton police officers observed the black Nissan parked in front of 7 Raintree Lane, Apartment 7F.

Based on the above information, an affidavit in support of a search warrant was filed on June 8, 2016. The search warrant for 7 Raintree Lane, Apartment 7F was signed on June 8, 2016 and

the search was executed the same day. Several items were seized as a result of the search: a small knotted baggie which contained a mixture of heroin and fentanyl; a loaded .38 caliber revolver; over 30 rounds of ammunition for a .38 caliber revolver; cocaine base (crack cocaine) in a small, knotted baggie; paraphernalia consistent with the preparation of cocaine base; packaging associated with drug trafficking; a scale consistent with drug trafficking; and paperwork associated with Lewis. The warrant return lists the following items as being found in the storage closet: the loaded .38 caliber revolver, 31 rounds of ammunition, scales and packaging, a knotted plastic bag of white powder, paperwork associated with Lewis, and a black scale.

## II. <u>7 Raintree Lane & The Storage Closet</u>

Carmen Depina is the registered lessee of 7 Raintree Lane, Apartment 7F, Brockton, Massachusetts. Ms. Depina lives there with Lewis and their child. Two cars are registered to 7 Raintree Lane, Apartment 7F in Ms. Depina's name – a 2010 black Nissan and a 2007 gray Toyota Camry. During their investigation, officers observed Lewis driving the black Nissan on at least two occasions and during the evidentiary hearing Ms. Depina testified that she allows Lewis to use the vehicles.

Apartment 7F is located on the second floor of an apartment building that consists of approximately 20 other apartments, 10

5

apartments per floor. To access apartment 7F, one uses an exterior staircase. At the top of the staircase there is a small landing with two doors adjacent to one another. One door is the entrance to Apartment 7F and one door is the entrance to a storage closet. The doors are located such that if the door to the storage closet is open, it blocks the door to Apartment 7F. While Apartment 7F and the storage closet share a wall, there is no internal door connecting the two. There are no other units on the landing.

The storage closet is not part of the lease agreement for Apartment 7F. Ms. Depina testified that she does not use the storage closet to store any of her belongings. However, Ms. Depina did purchase a lock for the storage closet to prevent the door from swinging open and slamming into her front door. Ms. Depina kept a copy of the key to the storage closet on the key ring to her Camry and provided one copy of the key to the apartment complex's maintenance worker.

## **DISCUSSION**

Lewis challenges the validity of the search warrant claiming there was insufficient probable cause to support the search warrant issued by the magistrate judge. Specifically, he argues that the affidavit failed to establish the nexus element and that information relied on in the search warrant was stale. Lewis also contends the scope of the search warrant was exceeded

when the officers searched the storage closet located next to Apartment 7F. Both of these arguments fail.

I. **<u>Probable Cause Analysis</u>**

"Prior to executing a search, police officers, with some exceptions, must obtain a search warrant supported by probable cause to believe that (1) a crime has been committed, and (2) that 'enumerated evidence of the [crime] will be found at the place to be searched - the so-called "nexus" element.'" <u>United States v. Joubert</u>, 778 F.3d 247, 251 (1st Cir. 2015) (quoting <u>United States v. Hicks</u>, 575 F.3d 130, 136 (1st Cir. 2009)). <u>Joubert</u> outlines the relevant nexus inquiry:

> When evaluating the nexus between the object and the location of the search, a magistrate judge has to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The application must give someone of reasonable caution reason to believe that evidence of a crime will be found at the place to be searched. The government does not need to show that the belief is necessarily correct or more likely true than false. Nexus can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment, and normal inferences as to where a criminal would hide evidence of a crime. The reviewing court's duty is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. And in making this inquiry, we focus on the facts and supported opinions in the affidavit, ignoring unsupported conclusions.

<u>Id.</u>

Here, a substantial basis existed for the magistrate's probable cause finding. On three separate occasions, police

officers observed vehicles registered to Apartment 7F used in drug deals involving Lewis. First, on February 22, 2016 communications between Rivera and Lewis suggested they were about to engage in a drug deal for 62 grams of and 14 grams of cocaine. Officers then observed the gray Camry, registered to Carmen Depina at 7 Raintree Lane, meet Rivera at 25 Columbia Street, a known stash house to the organization, and engage in what appeared to be a drug transaction. Second, on February 26, 2016, investigators observed Lewis enter the black Nissan at 7 Raintree Lane, drive to meet Rivera at 25 Columbia Street, and engage in what appeared to be a drug transaction. Third, on May 17, 2016, just three weeks prior to the issuance of the warrant, Brockton police officers observed the black 2010 Nissan engage in two separate drug transactions in a parking lot with two vehicles. The police then stopped both vehicles. Crack cocaine was recovered from the occupants of one vehicle and cocaine base and heroin was recovered from the occupants of the other. Members of both vehicles identified Lewis as the individual in the black Nissan – a vehicle registered to 7 Raintree Lane – who sold them the drugs. Twenty minutes later, the black Nissan was observed parked outside 7 Raintree Lane.

 Lewis also argues the information relied upon by the magistrate judge to establish probable cause to obtain the search warrant was stale. Stale information may not be used to

establish probable cause to obtain a search warrant. See United States v. Schaefer, 87 F.3d 562, 568 (1st Cir. 1996). "Whether or not the averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case." United States v. Hershenow, 680 F.2d 847, 853-54 (1st Cir. 1982). "Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and issuance of the warrant will not render the information stale. Id.; Andresen v. Maryland, 427 U.S. 463, 478-79 n.9 (1976) (holding that a three-month delay was not too long where the materials sought were business records prepared in the ordinary course of the defendant's law practice or his real estate company and where other facts supported a belief that he retained the records). However, courts have found that "[i]n the context of drug crimes, information goes stale very quickly because drugs are usually sold and consumed in a prompt fashion." Joubert, 778 F.3d at 252 (citing United States v. Brooks, 594 F.3d 488, 493 (6th Cir. 2010)).

The information in this case, which is three weeks old, is not stale. See United States v. Smith, 266 F.3d 902, 904-05 (8th Cir. 2001) (information in the affidavit regarding three controlled buys at defendant's residence occurring three months prior to application for search warrant was not stale); United

States v. Hartje, 251 F.3d 771, 775 (8th Cir. 2001) (lapse of one month between five methamphetamine transactions occurring over the course of two months and application for search warrant did not render information stale in light of the ongoing nature of crimes); United States v. Formaro, 152 F.3d 768, 771 (8th Cir. 1998) (controlled buy made two and one-half weeks before the application for a warrant not stale). While courts have recognized that drug information may go stale quickly, they have also found that "it is common ground that drug conspiracies tend to be ongoing operations, rendering timely information that might, in other contexts, be regarded as stale." Schaefer, 87 F.3d at 568; see also United States v. Nocella, 849 F.2d 33, 40 (1st Cir. 1988) ("By its very nature, drug trafficking, if unchecked, is apt to persist over relatively long periods of time.").

 Here, only three weeks prior to the search warrant affidavit, investigators observed Lewis engage in two drug deals with cars in a parking lot, investigators recovered drugs from both of the purchasers, and both of the purchasers identified Lewis as their supplier. The car Lewis used in the deal was then observed parked outside 7 Raintree Lane twenty minutes after the traffic stops. This car was registered to 7 Raintree Lane. Additionally, only three months before the search warrant affidavit, investigators observed Lewis, who was driving the

10

same identified car, a black Nissan registered to 7 Raintree Lane, leave that address, meet Rivera, engage in what appeared to be a drug transaction, and return to 7 Raintree Lane. This information is not stale.

## II. The Storage Closet

Lewis argues the storage closet was a common area not named in the search warrant and thus evidence seized therein is inadmissible. The government contends the search of the storage closet was proper since it was an appurtenant structure to the apartment. The Court assumes, without deciding, that Lewis has standing to challenge the search of the storage closet because he had a key to the lock. However, since the storage closet is appurtenant to the apartment, his motion fails.

Appurtenant structures are properly searched pursuant to a search warrant. See United States v. Fagan, 577 F.3d 10, 13 (1st Cir. 2009) ("So long as the officers executing the warrant have an objectively reasonable basis, in light of the known characteristics of the location and the evidence at hand, for concluding that a structure is appurtenant to the premises specified in the search warrant, that structure may validly be searched under the purview of the warrant."); United States v. Principe, 499 F.2d 1135, 1137 (1st Cir. 1974) (affirming denial of motion to suppress evidence seized from an appurtenant cabinet noting that "officers could reasonably suppose, given

the second floor layout and its proximity to the apartment, that the cabinet [outside of the apartment] was appurtenant to the apartment, as in fact it was"). "Structures that have been found to be appurtenant to described residential premises include such things as storage closets, cabinets, storage rooms and bins, lockets, mailboxes, and bird houses." Fagan, 577 F.3d at 13-14 (internal citations omitted).

Fagan is directly on point. In Fagan, the closet that was searched

> "was located on the third-floor landing, no more than eight feet from the front door of the apartment; the landing itself was small and led to the apartment; the spatial relationship between the closet and the apartment was intimate; the other residential units in the building were physically removed from both the third floor and the third-floor landing; and the key found in the defendant's bedroom opened the padlock that secured the closet. Thus, evidence found in the flat quite literally opened the door to the closet. That combination of factors was sufficient to permit an objectively reasonable officer to conclude that the storage closet was appurtenant to the apartment and to search the closet under the purview of the warrant."

Id. at 14.

Here, the search warrant authorized the search of 7 Raintree Lane, Apartment 7F, Brockton, Massachusetts. The apartment was described in the warrant as a two-story "side by side apartment style property and contains one (1) apartment on each floor." Docket No. 215, ex. 1, p. 4. The warrant authorized the search of "all rooms, crawl spaces, safes, briefcases, storage areas, containers, and containers such as safes, vaults,

12

file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, and trash cans located on or near the premises, that are owned or under the control of the occupants of such premises." Docket No. 215, ex. 1, p. 4.

The storage closet that was searched was located on the second floor landing directly next to the front door of the apartment to be searched. The second floor landing was small and led only to the entrance of the apartment to be searched. The other residential units in the complex were physically removed from Apartment 7F and its landing. The key to the storage closet was recovered from the apartment pursuant to the execution of the search warrant. Docket No. 215, exs. 3, 4. These factors were sufficient to permit an objectively reasonable officer to conclude that the storage closet was appurtenant to the apartment and to search the closet under the warrant.

## ORDER

The Court **DENIES** Lewis's Motion to Suppress (Docket No. 348).

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge