UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


Criminal No. 16-10166-PBS



UNITED STATES OF AMERICA


v.


VAUGHN LEWIS



**ORDER ON DEFENDANT'S MOTION
TO COMPEL THE PRODUCTION OF DISCOVERY
AND FOR EVIDENTIARY HEARING (#420).**



Kelley, U.S.M.J.

　　Mr. Lewis is one of seven defendants charged with participating in a conspiracy to

distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. He moved for production of

certain discovery and for an evidentiary hearing pertaining to an incident in which he was

identified as having sold drugs to two customers. (#420.) The government opposes. (#433.) An

oral argument was held on February 15, 2018, for the purpose of deciding whether defendant is

entitled to an evidentiary hearing regarding discovery. For the reasons set out below, the court

finds that an evidentiary hearing is warranted.

I. Facts.

A.   The Search Warrant and Detention Hearing.

Mr. Lewis was indicted on June 8, 2016. The same day, the government obtained a search warrant authorizing the search of his residence at 7 Raintree Lane, Brockton, Massachusetts. When the warrant was executed on June 9, the police seized a revolver, ammunition, heroin and cocaine, and items associated with preparing illegal drugs for sale, such as a scale and packaging material.[1] (#215 at 1.)

Brockton Police Detective Gary Mercurio, who is a task force officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and was the "lead detective from Brockton" on the investigation in this matter (#105 at 38). Detective Mercurio signed the search warrant affidavit, which is 83 pages long and requests warrant for nine locations, including Mr. Lewis's residence. (#215-2 at 83, affidavit.)

The affidavit contains the following information concerning Mr. Lewis: first, on two dates in February 2016, Mr. Lewis was intercepted on the wire-tapped telephone of a codefendant, Luis Rivera, seeking to buy cocaine from Mr. Rivera, and soon after talking to him, was seen meeting Mr. Rivera in Brockton, apparently to buy the cocaine, *id.* at 53-54, 57-59; second, on March 7, 2016, Mr. Lewis was intercepted in a telephone call with Mr. Rivera,

---

[1]Mr. Lewis later moved to suppress the evidence that was seized when the search warrant was executed (#198) and after a hearing, Chief Judge Saris denied the motion in a written Order (#288). Mr. Lewis's court-appointed attorney subsequently withdrew from the case because of a family crisis and a new attorney was appointed. (#458 at 13-14.) At recent hearings, Chief Judge Saris made clear that she intends to allow the newly-appointed attorney to explore whatever issues she needs to, including seeking additional discovery, in order adequately to represent the defendant. *See, e.g., id.* at 13. In this vein, Chief Judge Saris indicated that she would permit further litigation regarding the motion to suppress, depending on what discovery defendant receives. (#457 at 13; #458 at 12, 16.)

2

acknowledging that he owed Mr. Rivera money, explaining that he had not responded to multiple

calls from Mr. Rivera because he was working ten-hour days and watching his kids, stating that

he had not been dealing drugs recently but was looking to start up again, and asking Mr. Rivera

if he could supply him with suboxone, *id*. at 60-61; and finally, on May 17, 2016, three weeks

before the search warrant was issued for his residence, Mr. Lewis was observed selling drugs to

two customers from a car in a parking lot, *id*. at 61-62.

The incident in which Mr. Lewis reportedly sold drugs in a parking lot (the May 17

incident) is the subject of this motion. The notable fact about the incident is that the police did

not see Mr. Lewis in the car; they relied on the buyers, who were stopped after the sales, to

identify Mr. Lewis as the seller. The incident is described in the search warrant affidavit as

follows:

> On May 17, 2016, Brockton Detectives Keating, B. Donahue, and Carpenter
> established surveillance in Sidelines parking lot at the corner of North Cary Street and
> East Ashland Street, Brockton, Massachusetts. At approximately 7:15 p.m., Detective
> Keating observed a gray vehicle (#1) pull into the lot with a male operator and a female
> passenger. This vehicle was observed waiting in the parking lot for approximately twenty
> minutes before a black Nissan sedan (MA reg. 3DD925) pulled up next to gray vehicle
> #1. This was the same vehicle that investigators had observed LEWIS operating during
> previous surveillance.

> The female passenger got out of vehicle #1 and got into the front passenger side
> of the black Nissan sedan. Within a minute the female exited the black Nissan sedan and
> got back into the front passenger seat of vehicle #1.  Both vehicles stayed in the parking
> lot. During which time a red vehicle (#2) pulled up to the black Nissan sedan (sic). The
> red vehicle (#2) was operated by a male and had a female passenger.

> The female passenger exited vehicle #2 and got into the front passenger seat of
> the black Nissan sedan. The female was in the black Nissan sedan for approximately a
> minute before exiting and getting back into the front passenger seat of vehicle #2. I
> believe that the investigators observed a narcotics transaction.

> Detective Brian Donahue pulled over Vehicle #2 after it exited the parking lot.
> Detective Donahue identified both occupants and retrieved a piece of crack cocaine from

the white female passenger. During this time Vehicle #1 stayed in the parking lot while the black Nissan sedan, left the area. Detective Keating and Carpenter approached Vehicle #1 and identified themselves as police officers and identified both occupants. During the interaction with the occupants of vehicle #1, Detective Carpenter recovered substances that he believed to be cocaine base and heroin off of the male operator. This belief is based on the appearance of both substances.

The occupants in the vehicle #1 identified LEWIS as the operator of the black Nissan sedan who sold them the cocaine base and heroin. The occupants of the vehicle #2 also identified LEWIS as the person operating of [sic] the black Nissan who sold them the cocaine base.

Approximately twenty minutes later, Detective Brian Donahue observed the black Nissan sedan parked in front of 7 Raintree Lane, Apartment 7F, Brockton Massachusetts.

(#215-2 at 61-62.)

The government introduced testimony concerning the May 17 incident at Mr. Lewis's detention hearing. Detective Mercurio testified:

[T]he narcotics unit from Brockton PD were doing basically stationary drug surveillance on parking lots in the city of Brockton during which time they observed Vaughn Lewis conduct drug transactions to two separate vehicles and during those transactions both vehicles were subsequently stopped and heroin and cocaine were seized from the occupants of those vehicles.

(#105 at 33.)

Detective Mercurio was asked at the detention hearing what he knew about the identification of Mr. Lewis by the drug purchasers, and he responded that he did not know anything about it:

I don't recall the ex, I wasn't there for the exact identification of it. I mean the affidavit obviously includes surveillance of times when I'm not there so some of the reports that are generated and stuff I'm obviously aware of cause it's in my affidavit, but I don't know exactly how that identification went on that specific day.

*Id.* at 63-64.

4

B.  Mr. Lewis Requests Discovery Concerning the May 17 Incident.

On February 6, 2017, Mr. Lewis first requested discovery concerning his identification

by the two drug customers, by way of letter to the government (#149), followed by a motion to

compel (#162). In a written response to the motion, the government stated that the

> identification of Defendant occurred pursuant to an investigation conducted by state
> authorities and not pursuant to the federal investigation. As a result, the materials are not
> in the possession, custody or control of the government. If the government receives any
> such materials from state authorities, it will produce the materials.

(#186 at 2.)

Defendant filed a letter in response, arguing that the "state authorities," the Brockton

Police, were "working with the federal government during this investigation." (#196 at 2.) In

support, defendant noted that Brockton Police officers participated in the search of Mr. Lewis's

residence. *Id.* at 1 n.1. Defendant also argued that under *Kyles v. Whitley*, 514 U.S. 419, 437

(1995), he was entitled to learn of any favorable evidence known to others "acting on the

government's behalf in the case, including the police." *Id.* at 2.[2]

C.  The First Hearing Before the Magistrate Judge.

On June 22, 2017, this court held a hearing on defendant's motion. Defense counsel

argued concerning the identification of Mr. Lewis at the May 17 incident:

> I would like to know how the identification took place. I'm asking were they shown a
> photograph of Mr. Vaughn Lewis? Were they asked for a name or a nickname? I just
> want to know what was the procedure that was used when these people were questioned,
> these unknown people.

---

[2]Mr. Lewis also asserted that he was entitled under Local Rule 116.1(c)(1)(F) to discovery of any
identification procedures. (#196 at 2.) This Rule specifically states that such procedures must be disclosed
when they were "used with a witness the government anticipates calling in its case-in-chief." As the court
credits the government's assertion that it will not call any of the identifying witnesses in its case-in-chief,
the court finds that the rule does not apply.

5

(#392, transcript of hearing, at 4.)

The prosecutor represented that the government did not intend to use any evidence pertaining to the May 17 incident in its case-in-chief. *Id.* at 16. He said that as the government was "entitled to use whatever information's provided to" it in a search warrant affidavit, it was proper for the government to use information from the Brockton Police investigation to obtain the warrant. *Id.* at 12. Because the May 17 investigation was purely a Brockton Police investigation, however, discovery about that incident was simply unavailable: the prosecutor could not "reach into another police agency and demand that they turn over their internal reports." *Id.* at 13. "I cannot, and I, I will not, with all due respect, take on obligations that the federal government is not supposed to take on." *Id.* at 14.

After the hearing the court ordered the government to "ask the Brockton Police Department for any reports that exist regarding the 5/17/16 incident in which defendant is said to have sold drugs to two individuals, including notes of officers, and to provide any such reports to defense counsel." (#279.) The court invited defense counsel, after receipt of any documents, to "follow up" with another request for discovery if necessary. (#392 at 22.)

## D. The Two Hearings Before the District Court Judge.

In October 2017, new counsel was appointed to represent Mr. Lewis. (#382.) On December 15, at a status conference before Chief Judge Saris, defense counsel moved for discovery concerning the May 17 incident, stating that after this court's order of June 22, 2017, all Mr. Lewis had received was a report from the DEA that contained the exact information set out in Detective Mercurio's search warrant affidavit, and nothing concerning the details of the identifications. (#458 at 8.) Defense counsel explained that she needed the requested discovery

in order to evaluate whether Mr. Lewis would be filing a motion under *Franks v. Delaware,* 438

U.S. 154 (1978).[3] *Id.* at 11-13. The government agreed to provide the discovery. *Id.* at 9.

At a subsequent hearing before Chief Judge Saris on December 21, 2017, defense counsel

related that she had received a report from the Brockton Police that was "essentially the same" as

the DEA report that previously had been provided. (#457 at 7.)[4] She explained that Mr. Lewis

had never received any information concerning the identifications. *Id.* at 8.

The prosecutor informed Chief Judge Saris that "the agents" spoke to the Brockton

Police officers involved in the May 17 incident and were told that the Brockton Police report was

all the documentation the Brockton Police had. *Id.* at 9. Chief Judge Saris said to the prosecutor:

> So if you could just have the DEA agent call the police officer and find out if there's any
> notes or information about how the identification was made. Were these people known to
> him because they were criminals? Were they informants, or was [the identification] just
> basically to the car?

---

[3]*Franks* provides that "a defendant is entitled to an evidentiary hearing to test the veracity of a
warrant affidavit if he can make a substantial showing that the affiant intentionally or with reckless
disregard for the truth included a false statement in the affidavit, which statement was necessary to the
finding of probable cause." *United States v. Tanguay,* 787 F.3d 44, 48-49 (1st Cir. 2015) (citing *Franks*,
438 U.S. at 155-56).  Material omissions, made intentionally, recklessly, or negligently, may also form
the basis for *Franks* challenges, if certain requirements are met. *Id.* at 49.

[4]This court received the DEA and Brockton Police reports as exhibits at the February 15, 2018
hearing. The DEA report is substantially the same as what is quoted from the search warrant affidavit,
*supra*, with a few notable differences. In the DEA report, unlike the search warrant affidavit, the drug
purchasers are said to have identified "Vaughn Lewis with a D.O.B. [numbers redacted]"; the report states
that when "vehicle #2," containing two people, was pulled over by the police, "[b]oth parties were
identified (CI)"; the report notes that "[a]ll the identifications that were secured will be confidential, due
to [the buyers'] cooperation with the police"; and the report states that "[a]ll drugs recovered from both
stops were turned into Brockton Police Department evidence by Detective Keating according to BPD
rules and regulations."

The Brockton Police report is an undated, unsigned typewritten document, not on any form, just
on plain paper, that simply says "May 17, 2016 takeoff" at the top, followed by an account that is
identical in almost all respects to the DEA report. It cannot be the "notes" of officers; it is typewritten and
in complete sentences; the prose was repeated almost word for word in the DEA report and then the
affidavit of the search warrant.

*Id.* at 11 .

Chief Judge Saris added, concerning the information the government was to obtain:

"–how did these guys know [to identify the defendant]? Did they know this guy, the defendant,

and say, 'I know it's Vaughn Lewis'? Or did they just sketch something, or did they identify a

picture?" *Id.* at 12. The prosecutor argued that he was not obligated to provide such discovery,

but stated, "I'm prepared to do it . . ." *Id.* at 13. The court then invited defense counsel, if she

was not satisfied with discovery, to file another motion to compel by January 19, 2018. *Id.* at 13-

14.

E.  <u>The Second Hearing Before the Magistrate Judge</u>.

On January 19, 2018, Mr. Lewis filed the motion to compel at issue here, requesting "any

and all notes, reports or records related to the investigation and alleged identification of Mr.

Lewis, including information about the witnesses who reportedly identified him; drug logs, drug

certificates, field drug tests; chain of custody documents; and any subsequent prosecutions or

promises, rewards or inducements made to any of the witnesses who made the alleged

identifications of Mr. Lewis." (#420 at 4-5.) Mr. Lewis requested an evidentiary hearing in order

to obtain the information if there were no responsive written records. *Id.* at 5.

The government filed an opposition, stating that it had provided defendant with notes

from the Brockton Police Department and "Brockton Police Department documentation

regarding evidence seized." (#433 at 1.)[5] The government again argued that because the

materials "did not involve a federal investigation, but rather a local investigation by Brockton

---

[5]At the hearing on February 15, 2018, a form that the prosecutor referred to as a "custody receipt" (#422 at 29) from the Brockton Police was admitted as an exhibit. It appears to record that very small amounts of cocaine and heroin were stored as evidence with the Brockton Police starting on May 17, 2016.

8

Police officers," and because the investigation by the Brockton Police led to evidence that was only used in the search warrant in this case, "*Franks v. Delaware*, 438 U.S. 154 (1978) controls." *Id.* As Mr. Lewis had not made the "substantial preliminary showing" required under *Franks*, disclosure of information for purposes of a *Franks* challenge was not warranted. *Id.* at 2.

Chief Judge Saris referred the motion to this court. (#425.) This court held a hearing on February 15, 2018, to hear argument to determine whether defendant was entitled to an evidentiary hearing. Defendant argued as follows. First, he was seeking a hearing regarding discovery, not a *Franks* hearing. (#452 at 3, transcript of hearing.) Defendant was entitled to discovery because the prosecutor had been ordered to produce it by Chief Judge Saris. *Id*. at 4. There was the possibility that information about the May 17 incident might be exculpatory under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and *Kyles v. Whitley*, *supra*, and the prosecutor had made clear that he felt he had no obligation to investigate whether the Brockton Police had evidence favorable to Mr. Lewis relating to the May 17 incident. *Id*. at  8-11. An evidentiary hearing was warranted because, as counsel pointed out, the discovery that had been provided was "very conclusory," contained no information about the identification of Mr. Lewis, and with regard to the Brockton Police report, "it's not even clear who wrote this or if it's a Brockton report, if it's a DEA report, who knows?" *Id*. Finally, defendant could not know if he was "in a position to request a *Franks* hearing" until after he received the discovery. *Id*. at 3.

The prosecutor reiterated that since the May 17 incident was a "local investigation," information about it was not in the government's "possession, custody and control," and therefore the government did not have to provide any discovery about it. *Id*. at 11. In fact, the prosecutor insisted that he was actually *unabl*e to provide any discovery from the Brockton Police Department. *Id*. at 18. ("I cannot present information for an agency I can't access and I

can't access that agency and so I can't. I understand the Court thinks I can. I can't.") When

questioned about the source of the untitled, unsigned, undated report from the Brockton Police

that had been provided to Mr. Lewis, the prosecutor responded, "those are the notes that were

transmitted from Brockton to the DEA. The DEA then used those notes to create its DEA

[report]." *Id*. at 13.

## II.  The Law.

### A.  Rule 16.

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure requires disclosure of all

papers, documents, etc. that are within the government's possession, custody or control and are

"material to preparing the defense." In *United States v. Goris*, 876 F.3d 40 (1st Cir. 2017), the

First Circuit discussed what "material to preparing the defense" means under Rule 16 for

purposes of appellate review. "[I]t is not enough that the information the defendant sought 'bears

some abstract logical relationship to the issues in the case," *id.* at 44 (quoting *United States v.

Ross*, 511 F.2d 757, 762 (5th Cir. 1975)), rather, "a showing of materiality requires 'some

indication' that pretrial disclosure of the information sought 'would have enabled the defendant

significantly to alter the quantum of proof in his favor.'" *Goris,* 876 F.3d at 45 (quoting *Ross,* at

763.)  "This signification alteration may take place in a myriad of ways, such as 'uncovering

admissible evidence, aiding witness preparation, corroborating testimony, or assisting

impeachment or rebuttal.'" *Goris*, 876 F.3d at 45 (quoting *United States v. Lloyd*, 992 F.2d 348,

351 (D.C. Cir. 1993)).

A district court judge has wide discretion to decide what is material under the Rule, as the

trial court is in the best position to discern the potential importance of requested discovery. As the

court in *United States v. Ross* stated, "The operative terms of the rule are 'materiality' and 'reasonable.' The phrase 'the court may order' in the text of [Rule 16(d)(2)] clearly indicates that the granting of discovery  motions is a matter of the trial court's discretion." *Ross*, 511 F.2d at 762.

## B. *Brady* and the Local Rules.

To comply with *Brady v. Maryland*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf, including the police." *Kyles*, 514 U.S. at 437.  The obligation applies "irrespective of the good faith or bad faith of the prosecution," *Brady*, 373 U.S. at 87, and extends to evidence that impeaches the credibility of government witnesses. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *United States v. Osorio*, 929 F.2d 753, 758 (1st Cir. 1991). The rule of *Brady* is fundamental to our criminal justice system because the government's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (internal quotations omitted).

The Local Rules of the United States District Court for the District of Massachusetts "essentially clarify and codify discovery obligations that exist under the United States Constitution and the Federal Rules of Criminal Procedure." *United States v. Diabate*, 90 F. Supp. 2d 140, 141 (D. Mass. 2000). Local Rule 116.2(a)(2) defines "exculpatory evidence" as including information that tends to "cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731." The obvious import of this rule is that the government is required to search out and provide to the defendant discovery that

might cast doubt on the admissibility of evidence, because such evidence is exculpatory. This requirement has nothing to do with a defendant's burden to make a substantial showing before being granted a hearing under *Franks*. *See United States v. Jordan*, 2010 WL 625280, at *3 (D. Mass. Feb. 23, 2010) ("Since establishing that the search warrant affidavit contains false information is the first step in challenging the warrant, information that casts doubt on the accuracy of the information in the search warrant affidavit may 'cast doubt on the admissibility of evidence the government anticipates offering in its case-in-chief,' i.e. the fruits of the search. Such information must be produced promptly in accordance with [the Local Rule].").

Local Rule 116.8 requires members of the United States Attorney's Office to "inform all federal, state, and local law enforcement agencies formally participating in the criminal investigation resulting in the case of the discovery obligations that are set forth in these Local Rules and obtain any information subject to disclosure from each such agency." Local Rule 116.9 requires police formally participating in an investigation to preserve, among other things, "all contemporaneous notes, memoranda, [and] surveillance logs . . .  memorializing matters relevant to the charges contained in the indictment."

"[T]he rigors of *Brady* usually do not attach to material outside the federal government's control." *United States v. Sepulveda*, 15 F.3d 1161 (1st Cir. 1993).  In *Sepulveda*, the First Circuit found that the delayed disclosure of a presentence report concerning a government witness, which had been prepared by a state probation officer for a New Hampshire court, and which was not known to the government before trial, did not constitute a *Brady* violation. *Id*. at 1179. Similarly, in *United States v. Bender*, 304 F.3d 161 (1st Cir. 2002), the court found that the prosecution had not violated *Brady* by failing to seek out a witness's records from a state mental hospital, where

12

the witness was held in state, not federal, custody at the time he was transferred to the hospital,

the prosecutor did not know the witness had been in the hospital, and the prosecutor informed the

defense as soon as the witness told him.  *Id*. at 164.

In *United States v. Mannarino*, 850 F. Supp. 57 (D. Mass. 1994), a case involving Jencks

Act material that was wrongly withheld from defendants,  Judge Woodlock applied basic

principles of agency law to determine whether a State of Maine drug enforcement officer was part

of the federal prosecution team. Even though the state officer was not formally assigned to the

DEA, and could not be said to have been part of the federal investigative staff, his work as a

surveillance agent in undercover investigations and as the contact person with the federal

informant were "the actions of an agent of the prosecution team." *Id.* at 59. In ruling on the proper

test to be applied when deciding whether a local police department member is part of a federal

investigation, Judge Woodlock quoted a Fifth Circuit case:

> Imposing a rigid distinction between federal and state agencies which have cooperated
> intimately from the outset of an investigation would artificially contort the determination
> of what is mandated by due process.  Rather than endorse a *per se* rule, we prefer a case-
> by-case analysis of the extent of interaction and cooperation between the two
> governments.

*Id*. at 65 (quoting *United States v. Antone*, 603 F.2d 566, 570 (5th Cir. 1979)).

### III. Discussion.

#### A.  The Brockton Police Department Was Part of the Federal Investigative Team.

The government's assertion that the May 17 incident was a Brockton Police investigation,

wholly separate from the federal investigation of Mr. Lewis, is clearly wrong. First, the opening

paragraph of the warrant affidavit states that the Brockton Police Department was part of the

investigation:

> The ATF, the Drug Enforcement Administration ("DEA"), Homeland Security
> Investigative Services ("HSI") and local law enforcement agencies including the Brockton
> Police Department, initiated an investigation in October 2015, concerning the criminal
> activities of Luis RIVERA and members and associates of the BOYLSTON STREET
> GANG, a violent street gang which is engaged in various criminal activities in the Greater
> Boston and Brockton, MA area.

(#215-2 at 6.)[6]

As stated above, the case agent for this investigation, Detective Mercurio, was a Brockton

Police officer. (#105 at 38.) He was a sensible choice for lead officer of the federal investigation

because the investigation was based in Brockton. The search warrant affidavit lists nine warrants

sought for buildings connected with the conspiracy, six of them located in Brockton. (#215-2 at

2.) Luis Rivera, the primary target of the investigation, lived in Brockton, as did Mr. Lewis and

another codefendant, Brian Price. *Id.* According to the search warrant affidavit, Mr. Rivera's

"robust" cocaine trafficking business was conducted "from various residential locations in

Brockton." *Id.* at 53. Numerous controlled buys and other activities that were the subject of

surveillance in the investigation took place in Brockton, *see, e.g., id.* at 7-24, 46-66, 67-69.

The Brockton Police Department provided manpower and other resources to the federal

investigation. In the affidavit, Detective Mercurio describes utilizing the Brockton Police

Department's "in-house computer system" to search for information concerning a target's

residence, the target's girlfriend, and Brockton Police reports about the couple. *Id.* at 65. The

search warrant affidavit makes clear that Brockton Police officers were working together with

federal officers conducting surveillance, *see, e.g., id.* at 12 (Brockton Police Detective Ernest Bell

drives with HSI special agent to follow confidential informant home after buy); *id.* at 67

---

[6]This statement, acknowledging that the Brockton Police Department was part of the investigative
team, also appears in the introduction to the warrant. *Id.* at 2.

(Brockton Police Detectives Carpenter and Mercurio conduct surveillance of target's home); *id.* at

69 (Brockton Police Detectives Keating and Carpenter conduct surveillance of a target's home

with ATF officer).[7] The Brockton Police took part in the search of Mr. Lewis's residence. (#196

at 1 n.1.)[8]

Detective Mercurio testified at Mr. Lewis's detention hearing with regard to the May 17

incident that "the narcotics unit from Brockton PD were doing basically stationary drug

surveillance on parking lots in the city of Brockton during which time they observed Vaughn

Lewis conduct drug transactions." (#105 at 33.)  As set out above, the prosecutor repeatedly

insisted that this incident was a separate, completely independent investigation from the federal

investigation, conducted only by the Brockton Police, and thus no discovery obligations were

triggered. This argument is belied by another section of the search warrant affidavit, in which

Detective Mercurio relates that on March 29, 2016, he was with two Brockton Police officers as

they were "conducting surveillance on parking lots in the city of Brockton looking for street level

narcotic transactions." (#215-2 at 28-29.) On March 29, with Detective Mercurio participating,

the Brockton Police officers saw Antonio Sosa, another target of the investigation, selling drugs

out of a car. *Id*. They followed the purchaser, stopped her, seized drugs from her, and using an

procedure that is painstakingly described in the affidavit, had the purchaser identify Mr. Sosa as

---

[7]The court presumes these Brockton officers were not task force officers because the affidavit consistently notes whether officers were members of the task force, or were associated with the DEA or ATF, when naming them. While it is possible that some of these Brockton Police detectives were also task force officers, the court notes that Detective Carpenter was one of the Brockton Police officers who participated in the May 17 incident (#215-2 at 61), so if he was acting as a federal officer, that is another reason why the May 17 operation was part of the federal investigation.

[8]While the court does not have documentation that the Brockton Police participated in the search of Mr. Lewis's home, Mr. Lewis's counsel asserted it was so and the government did not dispute it.

the seller. *Id.* at 29-30.[9] The drugs seized, like the drugs in the May 17 incident involving Mr.

Lewis, were taken to the Brockton Police station and put in the evidence locker there. *Id.* at 30.

It cannot be that when Detective Mercurio participated in the surveillance of parking lots

with Brockton Police officers one day, the investigation was federal, but several weeks later,

when the same investigation was conducted with other Brockton Police officers watching a

parking lot, (at least one of whom, Detective Carpenter, was repeatedly involved in the federal

investigation, *see, e.g.*, #215-2 at 67, 69), the investigation was transformed into a "local

investigation"and was thus completely walled off from federal discovery. Further, the details of

the May 17 incident in the affidavit strongly suggest that the Brockton Police officers involved

knew, before they observed the alleged sales, that they were looking for Mr. Lewis. First, the

affidavit states that when the Brockton Police officers observed the Nissan, it "was the same

vehicle that investigators had observed LEWIS operating during previous surveillance." (#215-2

at 61.) In addition, before May 17, federal investigators had seen Mr. Lewis drive the black

Nissan, but it was not registered to him. (#215-2 at 58.) If the Brockton Police officers ran the

license plate of the Nissan on May 17, they would not have received Mr. Lewis's name, and yet,

when they stopped the purchasers, the purchasers identified Mr. Lewis, together with his date of

birth, as the seller. *Id.* at 62.

---

[9]The account of the incident regarding Mr. Sosa contains many more details than the account of the May 17 incident. First, the police saw Mr. Sosa in the car and identified him themselves.(#215-2 at 29.) The affidavit also contains an account of what the police and the buyer said to each other, what the buyer said about the drugs seized, how long she said she had been a customer of Mr. Sosa, her physical description of Mr. Sosa, her description of how he usually met her and what cars he usually drove, the nickname she knew him by, his telephone number, and his behavior during drug deals. *Id.* In contrast, the account of the identification of Mr. Lewis in the May 17 incident consists of: "The occupants in the vehicle #1 identified LEWIS as the operator of the black Nissan sedan who sold them the cocaine base and heroin. The occupants of the Vehicle #2 also identified LEWIS as the person operating of [sic] the black Nissan who sold them the cocaine base." *Id.* at 62.

An "analysis of the extent of interaction and cooperation between the two governments," *see Antone*, 603 F.2d at 570, that is, between the Brockton Police and the federal investigative team, leads to the conclusion that the investigation on May 17 was part of the federal investigation. Information about the May 17 incident thus is within the government's "possession, custody or control" under Rule 16, *Brady*, and the Local Rules.

### B.   The Discovery Sought is Material and May Be Exculpatory.

The court exercises its discretion to order discovery concerning the May 17 incident. The court finds that under Rule 16, defendant's request was sufficiently focused. *Compare United States v. Carrasquillo-Plaza*, 873 F.2d 10, 12 (1ˢᵗ Cir. 1989) (holding that defendant's "blanket demand" was "too general to satisfy the requirement of a request and of a showing of materiality."). In addition, information about the May 17 incident is material to the preparation of Mr. Lewis's case. The incident appears to be the only time anyone saw Mr. Lewis selling drugs to anyone. (#392 at 18.) The May 17 incident followed a telephone call which Mr. Lewis had with Mr. Rivera on March 7, 2016, in which Mr. Lewis suggested he was not selling drugs anymore. If discovery concerning the incident were to indicate that there were deficiencies in the investigation of Mr. Lewis, the defense could exploit that information at trial. *See Kyles*, 514 U.S. at 445-47 (holding that suppressed evidence would have permitted defense to attack government's case on grounds of the "thoroughness and good faith of [the] investigation" and the "negligence of [the] police."). The prosecutor's decision not to put evidence of the incident before the jury does not determine whether defendant may discover information about it. *Id.* at 450.

Defense counsel informed Chief Judge Saris that one of defendant's purposes in seeking the discovery was to see if he had grounds to attack the search warrant. (#458 at 11-13.)  It was

within the district court's discretion to allow this discovery. *Cf. United States v. Higgins*, 995

F.2d 1 (1st Cir. 1993) (holding that district judge has discretion to decide whether to allow

defendant *in camera* hearing or other disclosure to determine whether he can make preliminary

showing required to obtain *Franks* suppression hearing.) As Chief Judge Saris noted, "it was a

pretty devastating search," (#457 at 12), especially since a firearm was found, exposing defendant

to gun-related charges such as being a felon in possession of a firearm in violation of 18 U.S.C. §

922 (g) or possession of a firearm in furtherance of a drug trafficking crime in violation of 21

U.S.C. § 924 (c).  Even if Mr. Lewis is not charged with any crime  related to the firearm, at trial,

uncharged conduct may be admissible to prove charged offenses. *See United States v. Rivera-*

*Rodriguez*, 617 F. 3d 581 (1st Cir. 2010) (holding that gun is "relevant evidence" making it more

probable that defendant was a member of a drug conspiracy, because for drug traffickers, guns are

"tools of the trade"); *United States v. Moon*, 802 F.3d 135, 141, 144 (1st Cir. 2015) (holding that

in case charging felon in possession of a firearm, uncharged drugs found in search of defendant's

residence properly used to prove defendant's knowledge of, and dominion over, the firearm.)

Moreover, in the context of the facts set out in the search warrant, the May 17 incident was

important, because as the district court specifically noted in its Order on defendant's motion to

suppress, the May 17 incident was one that prevented the information mustered in support of the

search of Mr. Lewis's house from being stale and also provided a nexus between Mr. Lewis's

drug-dealing activities and his house. (#288, Memorandum and Order on Mr. Lewis's motion to

suppress, at 8, 9-10.)

Finally, given that the Brockton Police Department was part of the federal prosecution

team, the government has a *Brady* obligation regarding the May 17 incident which it has

steadfastly refused to fulfill. It is not known, therefore, whether any of the information sought is exculpatory.

IV.  <u>Conclusion</u>.

Chief Judge Saris specifically told the prosecutor to seek out and provide defendant with information about the identification during the May 17 incident. (#458 at 11-12.) Although he told the judge he would do it, *id.* at 13, he never did, and in fact subsequently told this court that he could not do so.[10] Because the government has obviously not fulfilled its obligations under Local Rules 116.8 and 116.9 to preserve all relevant discovery materials, some written discovery materials, such as notes, may have been destroyed.

The trial in this matter is approximately one month away. Because of the history of this dispute and the looming trial date, the court finds that it is appropriate to hold an evidentiary hearing for the purposes of providing discovery to defendant.

This court therefore orders as follows:

1.  An evidentiary hearing will be held. Defendant will inform the prosecutor which officers from the Brockton Police should appear and testify. The prosecutor will notify the officers of the hearing date and time. Subpoenas may be issued if necessary, but it is the job of the prosecutor to make sure the officers attend the hearing.

2. The officers shall bring with them all documents in the custody of the Brockton Police, including handwritten notes, concerning the incident on May 17, including concerning the witnesses who reportedly identified Mr. Lewis on May 17, 2016, the identification, drug logs,

---

[10]The court does not credit the prosecutor's statement that he is unable to get information from the Brockton Police. The statement is ridiculous, especially since he did, in fact, provide the so-called "notes" from Brockton that formed the basis of the DEA report and the segment in the search warrant affidavit detailing the May 17 incident.

drug certificates, field drug tests, chain of custody documents, and any subsequent prosecutions of

or promises, rewards or inducements made to any of the witnesses who made the alleged

identifications of Mr. Lewis.

3.  The officers who were involved in the May 17 incident and any other officers who will

attend the hearing are ordered under Federal Rule of Evidence 615 to be sequestered.  They:

A. shall not discuss this case, including but not limited to their prospective testimony, with

any other witness;

B. shall be excluded from the courtroom when other witnesses are testifying; and

C. shall not after testifying tell any prospective witness what they were asked or answered.

This Order shall not operate to prevent counsel from conferring with a witness prior to his

testimony. However, unless protected by the attorney-client privilege or some other

applicable privilege, such communications may be explored on direct and/or cross-examination of

the witness. The prosecutor shall inform the witnesses of this Order.


March 12, 2018                                        / s / Page Kelley
                                                     PAGE KELLEY
                                                     United States Magistrate Judge